The first case for argument this morning is 24-1751, Applied Predictive Technologies v. MarketDial. Mr. Goroff, am I pronouncing that correctly? You are indeed, Your Honor, and thank you. Please proceed. Good morning, Your Honor. It's David Goroff for Applied Predictive Technologies, or APT. Let me begin with USA Power I because it shows the kind of compilation secret sufficient to survive summary judgment under Utah trade secret law, and neither the district court nor defendants here address why APT's three compilations at issue deserve less protection. There, the defendant received three binders of information comprising USA Power's vision for a power plant. These included reports showing the plant's recommended configuration, expected cost performance and water usage, a marketing study, engineering drawings, a project description, and financial projections. So here, APT provided significant probative evidence showing its three compilations each meet the definition of trade secrets under both DTSA 1839-3 and the Utah Uniform Trade Secret Act. They contain business information that APT took reasonable steps to keep secret and that derived economic value by not being generally known or readily ascertainable by another person, and that person in turn could obtain economic value. Can you show us where in the opposition to summary judgment that APT really did identify what was the information that was not readily ascertainable that derived independent economic value? I mean, when I flip through the summary judgment opposition, which really just referenced a series of interrogatory responses, it was less than clear to me that the string sites and those rather generic interrogatory responses matched up with what the requirements are for identifying a trade secret. So I think you'd find it in detail, as you see in the record. You mean the string sites that you would have to dig through? No, I disagree with that, Geronimo. I mean, you have the response. So then it comes down to what you said in the opposition to the summary judgment motion. It comes down to the evidentiary record, which includes the expert reports of Kirsch and Tomke as well as their supplemental reports. Right, but you certainly wouldn't expect a district court judge to just go digging through the entire record and figure out for herself just exactly where the boundaries are of your trade secret that you wish to protect. It'll depend also on what the attorneys do to guide the judge through the morass of the record to actually pin down exactly what is, with some clarity, the trade secret and what is the information that derives independent economic value from not being readily ascertainable. But again, if you look at the response to the statement of facts, it's replete with direct and robust citations to the Kirsch report, to the Tomke report, to the supplemental reports, to FTI's forensics evidence showing the misuse of the PCB partner's capabilities. So I guess theoretically, is it your view that when you're put to the test and you're being asked to identify your trade secret, it's okay in your brief to just do a long string cite and say, get to work? It's in there? No, I think when you look at a summary, you're right. Okay, so that's right. So then therefore, the brief itself has to actually come forward behind the curtain and articulate something. And I think it does. I think there's a factual section of the brief. There's an accompanying response to the statement of fact. And remember, one of the important things here is under Bimbo Bakeries versus Sycamore, in the Tenth Circuit, the burden is not on APT to show what wasn't in the public domain. It was on market dial and defendants as move-ins to show what was. And they failed that burden. They were never held to that burden. Bimbo is 2017 Westlaw 308-9011. It's from July 20th, 2017. So some of what you are putting on— Can I—I mean, there's some citations. The district court relied on Bimbo very heavily as well, in addition to other cases. No, it did not rely on that, Your Honor. It relied on the Bimbo trial court appeal in the Tenth Circuit, the 39F-4. But ultimately, the burden is on the plaintiff to identify with some clarity what it claims to be its trade secret. Is that not right? That's certainly a burden on the plaintiff.  In summary, Your Honor— And here, there was a conclusion that there was a failure of proof on the plaintiff's part to come forward and explain and identify what its trade secret is. I mean, the problem here is there's no register, government register, we can all go to and see what Applied believes is its trade secret. I mean, it's—at the beginning of a litigation, it's—the plaintiff gets to make up what it wants to assert as its intellectual property right. There's no register to go to, and so therefore, it's really incumbent upon the plaintiff, when it's asserting a trade secret right, to come forward, you know, open up its kimono and explain itself as to what is the boundaries of the trade secret. But Your Honor, the district court well knew, for example, the partner capabilities briefing that was Exhibit 144, it well knew the standard deployment guide, it was Exhibit 42, it well knew what the data feeds were. The problem with it, if you look at the analysis, and it's all over the place in the district court's opinion, is it was asking what within these compilations was not readily ascertainable and was secret. And it was putting that burden on APT. That is impermissible under the Rivendell case in the Tenth Circuit and is impermissible under the USA Power 1 and 2 cases out of the Utah Supreme Court. So that is why the district court was struggling. We've got the bimbo Tenth Circuit case from 2022, talks about compilations, which we've got here, and we've got compilations within compilations, which is a lot more complicated than the normal trade secret. It says a plaintiff asserting a compilation trade secret must do more than point to a broad area of technology and assert that something there must have a secret been secret and misappropriated. Rather, it must define its trade secret so that its backfinder can determine if information claimed as a trade secret derives independent economic value from not being generally known or readily ascertainable by those who— And I completely agree with that. And we—remember, that's coming— And that's your burden. No, that's not—the burden at summary judgment is to come forward with significant probative evidence of the various elements. It is not to prove the case. Bimbo comes after a trial, as does the USA Power II case. And those are the cases that the district court primarily relied upon in assessing the trade secret. But again, Your Honor, please—I hope Your Honors will look at the record. Because the appellate record, let's say with the partner capabilities briefing, we had—Expert Kirsch said, it teaches the sequence of steps for marketing. It provides the steps necessary to compete in various sectors, and it describes APT's methodology. That's Appendix 5233 to 35. I'm more interested in what you want to point me to from your summary judgment opposition, which is really what you delivered to the district court, and that where in those pages did you summarize, this is it, this is our information that we are asserting to be our trade secret that has independent economic value, and here's why we believe it has independent economic value from not being readily ascertainable by proper means. I mean, Exhibit 144 is the partner capabilities briefing, and that was— I understand you have a document called that, but at the same time, IDX had a 43-page summary of some software package, and in that particular opinion, the court said, no, you can't do that. You've got to be a little more clear about what is the publicly available information in there, the not publicly available information. You can't just throw an entire document like that at the court and expect the court to figure it out. There's a dispositive difference between IDX and the facts here. IDX, first of all, isn't a compilation case. Second of all, it involved the creation of a 43-page summary of litigation after the facts. It was never used or seen by the opponents. Here we have admitted misuse. The partner capabilities briefing, as the FTI forensics evidence showed, was used by MarketDial to create its modules, and the SDG, the standard deployment guide, was used by MarketDial for a Lululemon presentation, and the data feeds, they offered free services to a gas station client that APT had spent years developing its customized feeds with so that they would breach their, the client would breach its agreement and provide to them those, that customized feeds, and then did this with other clients as well. But how does that answer the question about whether there's a trade secret here? I mean, if the evidence that they were using something that you claim was what you had initially is relevant, but it doesn't answer the question that's dispositive here, which is whether you've identified with some particularity what you claim to be the trade secret. Again, the court knew what we identified. The court analyzed it from the wrong perspective. The court said, where, I'm not going to look at the PCB as a whole. That is what Rivendell in the Tenth Circuit, that is what USA Power One instructed the judge to do. The judge did not do that. The judge says, show me where they're in, is the- If we think that perhaps there is at least a genuine dispute of material fact about whether if one carefully looked at all of the materials that you put in the record, that there's a trade secret there. But we also think that you completely failed to make clear to the district court at summary judgment what that was. What are we supposed to do? I think you have to do, well, number one, I don't agree that that's the state of the So hypothetically, if I think, look, I will give you that it's there, but I will also tell you, I don't think you set it out for the district court. Do I affirm or do I reverse? I think you reverse because I think you have, the court has an independent duty to look at the record. So now I have to go back as a fact finder and evaluate the mass of evidence that you've failed to summarize adequately for the district court? Not as a fact finder, your honor. The question is, on de novo review, there is no deference to the district court. There's been no fact finding here. So you have to look at what the district court did, both in terms of the law that it applied, which we know is wrong, because it redid the bit by bit analysis that's forbidden, and you have to look at the conclusions the district court drew with respect to the record. And here, if you look at the record, I don't think there's a question that there's trade secrets here, that the PCB, that the SDG, and the data feeds are extremely valuable. They were used for value by Markedile. So even if you failed to do what you needed to do to explain all that to the district court, we should nonetheless let you do it now and tell the district court it got it  Again, I will argue that that's not what happened, but I would say yes, I think that is your duty as a reviewing court. You have to look at whether you're getting a just result, as opposed to here, which is really a decision that kind of rewards theft and that didn't hold them to their burden. That response, it sounds a little disrespectful to the district court. It sounds almost like you get to do a complete do-over. And if you do a truly skeletal presentation at the district court level, and the district court sees your skeletal presentation, says, well, this is just plainly not good enough. It's not clear enough. It doesn't give me enough details. There's no meat on this bones. It's just a skeleton. And then you get to do a second try at the appellate level, and now provide us with a much more bespoke, tailored presentation of what the actual aspects of the trade secret are. And then we say, so therefore, the district court erred in ruling otherwise. Your Honor, you have a duty of de novo review. You're in the land of hypotheticals, because that's not what happened. I know. I am in the land of hypotheticals, and that's the hypothetical I want you to address. Right. And so, again, the court has an independent duty to examine the record. In this particular case, you had more than 200 exhibits. You had a response to more than 200 statements of facts that our client made, and in that response, you had a limited page length that the parties had, and you had to crunch a lot of information in. The information was there. If you look at the district judge's opinion, the district judge understood what was being asserted. It just did not analyze it through the proper standard of law. And so I do believe it's this court's obligation, where there's a legal error and a factual record that demonstrates legal error, to reverse. I don't think that's disrespectful. I think that's the duty of an appellate court, actually. Okay. We're well into our rebuttals. I do understand that. Thank you, Your Honors. Good morning, Your Honors. May it please the court. This court should affirm summary judgment in this case, because at the district court level, APT failed to identify a trade secret sufficient to allow a jury to apply the statutory standards. As this court recently stated in Alifax v. Alcor, APT not only failed to describe the judge's trade secret with sufficient detail, but also failed to identify its proper scope. Your opposing counsel says that the entire PCV document was a compilation trade secret, and so the district court, just right out of the gate, made a serious error in asking the question of what is inside the PCV that is the trade secret, when, in their view, it's the entire PCV document. So, can you speak to that? Sure. Case after case, Your Honor, says that simply pointing to a document or documents is not enough. I would reference, Your Honor, to Brigham Young University v. Pfizer, Utah Medical Products, Double Eagle Alloys, Quest Solutions, TLS Management, all of those cases say that simply pointing to a document is not enough. And that's exactly what- An entire document can, in fact, be a trade secret, can it not? A document- Either under a compilation theory or otherwise. A document can contain a trade secret, I would agree with that. But it's incumbent upon APT to identify the information within that document that constitutes the trade secret. And what APT wanted to do here, and Judge Parrish asked several pointed questions at oral argument to APT about this very issue, APT simply wanted to submit the document, just put the document in front of a jury, and ask the jury to assess the document as a trade secret. She asked, for example, quote, so your contention then is that the document itself is the trade secret, not any of the individualized information contained within the document. And APT's answer was, quote, right. That's at Appendix 7654. So the PCB, or the Software Deployment Guide, cannot be a trade secret simply because it's a document, even if it's marked as confidential information. Let me ask you two quick questions. Your friend rested a couple times on Rosendale, which is, I think, a 1994 Utah case. Rivendale? Rivendale, sorry. Can you respond to that? Sure. Rivendale is actually a Tenth Circuit case. I don't believe it came out of Utah. I want to say Oklahoma, but I'm not 100% sure about that. Let me address two points about the Rivendale case. So first of all, APT claims that Judge Parrish went against Rivendale by analyzing the secrets bit by bit. But in fact, Judge Parrish did not analyze the secrets only bit by bit. She had two entire sections of her summary judgment order that were dedicated to evaluating APT's compilation claims. And she correctly found that APT's, quote, abstract post hoc groupings were not sufficiently identified to allow submission to the jury. She also evaluated each of the alleged trade secrets at issue as compilation trade secrets. The second point I would make about Rivendale is that Rivendale was not a trade secret identification case. The trade secret in Rivendale was clearly identified. It was identified as a computer program that drew upon eight specifically identified information databases to make a set of six specifically identified calculations. So the Rivendale court never addressed the question of whether the plaintiff had adequately identified a trade secret. Let me ask you another two more quick questions. This case was brought under the Utah Trade Secret Act and the federal? That's correct. And everybody does, generally the Utah is a little less, has fewer requirements, a little looser in identifying a trade secret than the federal statute. So that's a great question. Your Honor, I would submit that there might be a subtle difference in terminology. But I think even the district court kind of acknowledged that even using the Utah thing, which is slightly less, so she was careful to review it under the Utah. She suggested that there might be a little daylight between the Utah standard and the federal standard. And let me tell you where that comes from. It comes from Justice Durant, who in USA Power said Utah has no particularity requirement because if there is a particularity requirement, it's for the legislature to decide that. That power one or power two? That was power two. Okay. Because your friend relied repeatedly on power one and I think the district court more extensively relied on power two.  And power one, again, was not a trade secret identification case. The point of power one was that a compilation of public information can be a trade secret if it's compiled in a uniquely valuable way. That was the import of power one. Power two actually teaches it. It says there's no particularity requirement. But immediately following that pronouncement, it says twice, the trade secret at issue, however, must be identified in a manner that allows the fact finder to determine if a trade secret exists under the statute. Are they going to have another chance on this? I mean, did they see this coming and now that they have kind of a roadmap from the district court judge in terms of what she's looking for to be identified with particularity, is there going to be another opportunity for them to come up with something else? Well, I might be a little bit confused by your question, Honor, because I think their opportunity to come forward was at summary judgment. That was the moment where SEC versus Gen Audio says that is, using crass words, the put up or shut up moment for APT to come forward and to identify their trade secret in a manner that a jury could apply the statutory standard. Yeah, but now they may know what they didn't know before, which is at least what this district court requires in terms of particularity, and maybe they could do it on another try. No, again, maybe I'm just not quite understanding your Honor's question, for which I apologize, but their opportunity to come forward with a trade secret identification was at summary judgment, your Honor. And as Judge Chen pointed out, the key piece of evidence that this court should review is APT's summary judgment opposition. And I would even throw into that their response to interrogatories, especially interrogatory number one. And when you take their summary judgment opposition together with interrogatory one, and you review those documents, and then you do it in light of this court's standards in Halifax and Coder Development, the Tenth Circuit standards in Double Eagle Alloys, and even the Utah Supreme Court standards in USA Power, it leads to the conclusion that APT failed to adequately identify a trade secret such that a jury could apply the statutory standards to the information, because we didn't know what the information was. Take the PCB, for example. In their interrogatory response and in their summary judgment opposition, APT identified strategies for effectively using Test and Learn, but didn't reveal what those strategies were. They identified elements of the Test and Learn software without identifying what the elements were. They talked about methods for choosing control groups, but never revealed what the methods were. And they talked about how Test and Learn chooses the number of locations without explaining the how. And this court has said in both Halifax and Coder, it is insufficient for a plaintiff to simply identify a what without explaining the how. And this was all about compilation trade secrets, correct? They're predominantly. It was certainly predominantly. The district court, I think, used the term, and this is about compilations within compilations. Is that a thing? Or is there such a thing in the law as compilations within compilations? I've never read about compilations within compilations. But that was the problem in this case, Your Honor, is that we had 14 trade secrets. Each one itself was a compilation, and any combination of those together was a compilation, which led to this circuitous problem of what exactly is the trade secret? And within that circuitous list of compilations within compilations, we could never get beyond long lists of generalized labels and categories. And I think we even see that in APT's appellate brief before this court. Their lists have certainly gotten longer than they were as presented to the district court. But again, I would submit, not with any better detail about the how, again, getting beyond just the what into the how. What do you say to opposing counsel's suggestion that even if we agree with you that maybe there's some deficiency in explanation, we have the massive record and we have a de novo obligation to hunt through it ourselves and try to discern the how and what the trade secret is? Yeah. Well, I think Judge Chan has hit on that point very well. You have to identify what it was that was presented to the district court on summary judgment. That was APT's opportunity to come forward. And if you read their summary judgment opposition like I did, and frankly, even their appellate brief, you can't help but thinking of using words adopted by this court in Olaplex. You can't help but thinking about a pig hunting for truffles buried in the record. And I think APT has left this court to do the exact same thing, asking this court to hunt through the record in search of something that resembles a trade secret. And that just simply doesn't meet their burden. And they absolutely didn't meet that burden before the district court on summary judgment. I also want to briefly address, if I have a moment, I want to address the claim that APT has relied very heavily on the alleged bad acts of my clients. And I would suggest to the court that these types of bad acts exist in virtually every trade secret case. And there is no case, APT has not cited a case, and I am not aware of a case, in which you can take bad acts to somehow substitute for a failure to identify the information that constitutes a trade secret. You mean alleged bad acts or bad acts? I will say alleged. Thank you, Your Honor. I absolutely mean alleged bad acts. This court can assume the very worst version of all the alleged bad acts and still face the hurdle of what is the information that is alleged to constitute the trade secret. USA Power II, the case on which APT relies, unequivocally holds that a plaintiff cannot establish the existence of a trade secret through evidence of use. That's at paragraphs 44 and footnotes 67 and 68. And the CDC case, on which USA Power II relied, held that misuse is not even a factor in deciding whether a trade secret exists. So I think that becomes a dead issue. The last issue that I would like to address, absent question, is APT's complaint that we referred to the wrong version of the partner capabilities briefing. This, Your Honors, is a prime example of APT's failure to properly and sufficiently identify a trade secret. If you look at their responses to interrogatory number one, their first response identifies the 27-page PCB and only the 27-page PCB. The 67-page, 28 pages, sorry, the 67-page PCB does not make its debut until APT's fourth supplement to interrogatory one. And even then, it's a long list of 57 different Bates-numbered documents. The 67-page version happens to be in there. Not one of those Bates numbers is explained to differentiate it in any way from the 28-page version. So this is a complete red herring. They argued it in opposition to summary judgment. And the court considered it in her memorandum. We have your argument. Thank you very much. Thank you very much, Your Honors. Will we start two minutes of rebuttal? Thank you, Your Honor. Your Honors, if you'll look at the record, the response to the statement of facts goes into great detail as to all of these three compilations. If you'll look at pages 7, 4, 2, 6 of the appendix, pages 7, 4, 3, 0 through 4, 0, pages 7, 4, 4, 8 through 5, 1, they discuss each of the data feeds, the standard deployment guide, and PCB. And they also discuss their taking that. Where's your best example in there of identification of a specific trade secret that a judge could instruct a jury on to evaluate? Is this really, have you proven misappropriation of this? Just as one example, because I'm looking at it, Statement of Fact 96, which says that no defense... What page are you on? I'm sorry. Appendix 7, 4, 5, 0. The seven data feed documents identified in APT's ROG 1 reflect APT's know-how, processes, techniques, concepts, discoveries, methodologies, tools, and data models relating thereto, which are incorporated into APT's data feeds and protected by disclosure from Exhibit 112. If we go down that page in response to Statement of Fact 98... These are responses to their statements of fact. That's correct. And when we get to the argument section where you're supposed to explain to the district judge what this mass of disputed facts means, where do you do something meaningful that helps the judge understand what Statement of Fact 96 means? I think there was a constraint in terms of what you could say in argument by page length. And so there was a citation to this, which the court obviously had... Is that an admission that you didn't do what I just asked you? I think the response to the Statement of Facts is incorporated in the summary judgment response and absolutely counts for that purpose. Let me also say, Mr. Call talked about USA Power I and Rivendell not being trade secret identification cases. They absolutely were. In both cases, you had lower courts which said there was no compilation trade secret. In both cases, the higher court said that's because the court below misanalyzed it, looking bit by bit, when you had to look at the entirety of it. The last thing I will say is one of the requirements to show a trade secret under 1839 is the value to the other side. So the notion that Mr. Call offers that you cannot look at their bad acts is contrary to that principle. It is also contrary to what USA Power actually said, which is you can't use... You can't prove ownership of a trade secret through, meaning solely through, bad acts. But you obviously can look at that. And if you want another case that does say that, Paz Systems v. Dakota Group, 514 F sub 2D 402 out of the Eastern District of New York is one of tens. Thank you very much, Your Honors.